**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RONALD E. RAYMOND,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant-Appellee.

No. 09-2094

**ORDER**

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

Appellee's motion to publish the Order and Judgment dated December 15, 2009, is granted. The Opinion is filed nunc pro tunc to the original filing date and is attached to this order.

Entered for the Court

Elisabeth A. Shumaker, Clerk

FILED
United States Court of Appeals
Tenth Circuit

December 15, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RONALD E. RAYMOND,

          Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant-Appellee.

No. 09-2094

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:08-CV-00515-KBM)

**Submitted on the briefs**[*]

Francesca J. MacDowell, Martone Law Firm, Albuquerque, New Mexico, for
Plaintiff-Appellant.

Gregory J. Fouratt, United States Attorney, Manuel Lucero, Assistant United
States Attorney, Michael McGaughran, Regional Chief Counsel, and Dianne
Mullins Pryor, Special Assistant United States Attorney, Social Security
Administration, Dallas, Texas, for Defendant-Appellee.

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**GORSUCH**, Circuit Judge.

Ronald E. Raymond appeals the district court's order affirming the Commissioner's denial of his application for supplemental security income (SSI) payments. Discerning no reversible error, we affirm.

I

In his application for SSI payments, Mr. Raymond alleged he was disabled and unable to work due to degenerative lumbar and thoracic disc disease, a rotator cuff injury, an old fracture of the left hand, arthritis, and other maladies. To establish his disability, Mr. Raymond had to show that he suffered from

> an inability to engage in any substantial gainful activity and a physical or mental impairment, which provides reason for the inability. The impairment must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citations and quotation marks omitted). The Social Security Commissioner concluded that Mr. Raymond failed to meet this threshold and so denied his initial benefits application, as well as his later application for reconsideration.

Mr. Raymond then requested and received a hearing before an administrative law judge (ALJ) where both he and a vocational expert testified.

2

The ALJ, however, agreed with the Commissioner that Mr. Raymond was not entitled to benefits. The ALJ found that, although Mr. Raymond could not perform his past work, he retained the residual functional capacity to perform other jobs such as sales attendant, office helper, and rental clerk — all jobs available in significant numbers in the national economy. After the Appeals Council denied review, the ALJ decision became the final decision of the Commissioner. Mr. Raymond sought review of this decision in the district court, where the parties agreed to proceed before a magistrate judge. After that court declined to disturb any aspect of the Commissioner's decision, Mr. Raymond brought this appeal.

## II

We may review the Commissioner's "decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (internal quotation marks omitted). Mr. Raymond believes the decision in this case warrants reversal under these standards for three reasons that merit discussion. We examine each in turn.

A

Mr. Raymond argues that the ALJ improperly assessed the opinion of his treating physician, Dr. Steve Petrakis. More specifically, Mr. Raymond argues that the ALJ improperly found that his March 2004 visit to Dr. Petrakis represented his last visit to the physician. Mr. Raymond alleges he saw Dr. Petrakis twice after March 2004 — in July and October 2004 — and the ALJ failed to consider records from these visits. An initial difficulty with this argument is that substantial evidence exists in this record to support the ALJ's finding. The evidence Mr. Raymond cites of the July visit does not indicate which physician of the various ones in the practice saw him. The evidence Mr. Raymond cites pertaining to the putative October visit does not show that Dr. Petrakis actually saw Mr. Raymond but suggests only that the two spoke by phone. Given the presence of substantial, if not undisputed, evidence in the record to support the ALJ's finding, we are unable to disturb it.

Mr. Raymond relatedly argues the ALJ should have but failed to give at least "some" weight to Dr. Petrakis's October 2004 notes. But the record before us reveals that the ALJ expressly *did* afford some, albeit "little," weight to Dr. Petrakis's opinions and his October 2004 notes. App. Vol. II at 17. To the extent that Mr. Raymond might be understood as contesting the ALJ's decision to decline to give the physician's opinion controlling weight, we likewise see no reversible error. An ALJ may decline to give controlling weight to the opinion of

4

a treating physician where he "articulate[s] specific, legitimate reasons for his decision," *Cowan*, 552 F.3d at 1189, finding, for example, the opinion unsupported by "medically acceptable clinical and laboratory diagnostic techniques" or inconsistent with other substantial evidence in the record, *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's opinion in this case does just these things. For example, the ALJ noted that Dr. Petrakis's very brief October 2004 notations simply recite Mr. Raymond's complaints; that those notes do not appear to be based on a physical examination; that they provide little analysis of Mr. Raymond's physical limitations; and that they are inconsistent with other medical evidence in the record largely based on physical examinations of Mr. Raymond. In light of all this, the ALJ determined that, while Dr. Petrakis's opinion was worthy of some weight, it did not merit controlling weight because it was "brief, conclusory, and unsupported by objective medical findings." App. Vol. II at 17. Each of these findings is supported by substantial evidence in the record.[1]

---

[1]    Mr. Raymond argues that the magistrate judge erroneously offered additional, *post-hoc* reasons to support the ALJ's conclusion about the weight due Dr. Petrakis's opinions when, for example, he suggested that Dr. Petrakis's brief October notes might not merit deference because they do not constitute a full-blown "medical opinion." We need not decide this. Our review of the ALJ's decision reveals that it is fully supported on its own terms for the reasons we have given.

B

Mr. Raymond next contends that the ALJ's decision to discount his own credibility was improper. We have explained, however, that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhardt*, 395 F.3d 1168, 1173 (10th Cir. 2005). At the same time, we have indicated that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.*

The ALJ's finding was so linked in this case. The ALJ expressly stated that he reached his credibility assessment only after a careful consideration of the record, and he then proceeded to offer extensive reasons for his credibility finding, reciting and relying on a great deal of record evidence:

> I have also considered other factors, including the claimant's medical treatment and his daily activities . . . A consideration of these additional factors does not change my conclusion that the claimant can perform a limited range of light work . . . The claimant testified that he was taken off of stronger pain medication (i.e., Percocet) and was put on Celebrex. However, he testified that sometimes Celebrex does not help his pain. He uses a brace two or three times per week. He last saw Dr. Petrakis in March 2004. He currently is treated by First Choice Community Healthcare and sees a chiropractor. He testified that he does not have enough money to go to the chiropractor very often. He has also attended physical therapy but stated that he did not think that physical therapy was helpful . . . . The claimant has been able to ride a motorcycle, even in winter. He testified that he drove a motorcycle 10 minutes ago; he was on it for 15 minutes to get to the hearing. He can ride a motorcycle up to 50 miles without stopping. He is able to

6

ride his motorcycle from Albuquerque to the Acoma Laguna Hospital. He also testified that he cooks and uses the microwave on an average day. In addition, he washes dishes, makes the bed, and sweeps the kitchen and vacuums his 55 by 15 foot trailer once per week. Therefore, the claimant can perform a limited range of light work as set forth in my hypothetical question to the vocational expert. Although there is evidence of degenerative thoracic and lumbar disc disease, there is no evidence of any spinal stenosis or neurological dysfunction. Although Dr. Petrakis was of the opinion that the claimant's medical conditions interfered with his ability to work, the claimant had not seen Dr. Petrakis since March 2004. Although there is evidence of an old fracture in his left hand, a history of a right rotator cuff tear, and inflammatory arthritis in his hands, there in no evidence that these impairments, alone or in combination, would preclude occasional handling, fingering, and feeling. Finally, the claimant is able to engage in a wide range of household chores and can ride a motorcycle.

App. Vol. I at 70-72 (Magistrate Memorandum Opinion and Order quoting the ALJ Decision). Given the depth and extent of the ALJ's analysis in light of the record as a whole, we agree with the district court that we may not second-guess his credibility determination in this case.

C

Even assuming the ALJ's assessment of his physical limitations was accurate, Mr. Raymond argues that the ALJ erroneously concluded that he was able to obtain gainful employment for two reasons. First, Mr. Raymond argues that the ALJ erroneously relied on testimony by a vocation expert that he was physically able to work as a "sales attendant" or an "office helper." According to Mr. Raymond, the requirements of these jobs exceed his physical abilities, even as found by the ALJ. Second, Mr. Raymond argues that a third job the vocational

7

expert said he could perform — that of "rental clerk" — doesn't exist in "significant" enough numbers to qualify as a meaningful option for him. *See* 42 U.S.C. § 423(d)(2)(A).

We need not resolve Mr. Raymond's first challenge. Even assuming without deciding that he is unable to work as a sales attendant or office helper, there is no colorable dispute that substantial record evidence supports the ALJ's conclusion that he can work as a rental clerk. Accordingly, the only question we must decide is whether or not that job exists in significant enough numbers.

It is undisputed that there are some 1.34 million rental clerk jobs available in the national economy and 385 in the New Mexico economy. It is also undisputed that we have found far fewer than 1.34 million jobs in the national economy to qualify as "significant." *Cf. Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding only 152,000 jobs in the national economy sufficient). Neither does Mr. Raymond dispute that 1.34 million rental clerk jobs in the national economy is a legally "significant" number.

Instead, Mr. Raymond argues only that significant numbers of a prospective job "must exist in the *regional* economy" before an ALJ can avoid a disability finding, and emphasizes that only 385 rental clerk jobs exist in New Mexico. Aplt. Opening Brief at 16 (emphasis added). The problem is that the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy. In 42 U.S.C.

8

§ 423(d)(2)(A), for example, Congress prescribed that "[a]n individual shall be determined to be under a disability only if . . . [he cannot] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area . . . . '[w]ork which exists in the national economy' means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." *Id.* (emphasis added); *see also* 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy."); *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005) ("The Commissioner met her step-five burden of proving that there are sufficient jobs in the *national economy* for a hypothetical person with Jensen's impairments." (emphasis added)); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (noting that the claimant must show his impairments prevent him from performing his past work, and then the burden shifts to the Commissioner to show that the claimant can perform work in the *national economy*); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (noting that jobs need only exist within "the regional *or* national economy" (emphasis added)).

In fact, the Sixth Circuit in *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999), explicitly stated that "[t]he Commissioner is not required to show that job opportunities exist within the local area." In that case the vast majority of the

9

jobs available closest to the claimant were about 70 miles from her home, *id.* at 291-92, but the court, after examining the same statutes and regulations applicable to this case, concluded that "the number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy — not just a local area," *id*. at 292. We see no reasoned basis on which we could reach a different result in this case.[2]

* * *

The judgment of the district court is affirmed.

---

[2]     Mr. Raymond cites *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), and argues that the ALJ should have engaged in a multi-factor analysis to assess whether there are significant jobs in the regional economy. But this is not what *Trimiar* requires. Like our other cases, the court in *Trimiar* indicated that the relevant test is *either* jobs in the regional economy *or* jobs in the national economy. *Id.* at 1330-32. In *Trimiar* the focus was on jobs in the regional economy because the vocational expert in that case testified *only* to the number of available jobs in the *regional* economy. Because the number of such jobs was between 650 and 900, and because this circuit has "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number,'" the court turned to the multi-factor analysis to help it resolve the question whether 650 to 900 jobs is a "significant" number. *See id.* at 1330. *Trimiar* does *not* hold that only regional jobs are relevant or that a court must engage in a factoral analysis when the number of jobs relevant available is, as here (1.34 million), much larger.

10