**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KEITH R. BUTLER,

          Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant-Appellee.

No. 10-4099
(D.C. No. 1:09-CV-00108-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

      Keith R. Butler appeals the district court's affirmance of the

Commissioner's denial of his applications for Social Security disability and

supplemental security income benefits.  Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we AFFIRM.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

Mr. Butler, who was born in 1960, worked as a plumber until he was injured in a car accident in August 2002. After the accident, he suffered from pain in his back, legs, neck, and shoulders. In 2003, he underwent back and shoulder surgery, and because of increasing pain, he had another back surgery in 2004. Later that year, he began working as a sales associate at a Home Depot store. He kept that job until Home Depot terminated his employment for disrespect to a supervisor in September 2006.

Mr. Butler filed for benefits on December 27, 2006, alleging his onset date to be September 29, 2006. An administrative law judge (ALJ) denied his applications. The ALJ concluded that despite his severe impairments of disorders of the back, osteoarthritis and allied disorders, and obesity, he retained the Residual Functional Capacity (RFC) to perform sedentary work, with restrictions. Although Mr. Butler's RFC did not allow him to return to his past relevant work, a vocational expert testified that there were jobs in the national economy that he could perform. The ALJ accordingly found him not disabled. The Appeals Council denied review, the district court affirmed, and Mr. Butler now appeals.

**II.**

Employing a de novo standard of review, "we independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation

omitted).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  "It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation omitted).

Mr. Butler contends that the ALJ erred in discounting his credibility and in assessing the opinions of his treating physician and two examining medical practitioners.  We address each argument in turn.

## A.  Credibility

The ALJ concluded that Mr. Butler's testimony about his limitations was "not compatible with or reasonably consistent with the medical evidence of record and other evidence."  Aplt. App. at 28.  In support, the ALJ noted that a physical therapist performing functional capacity testing (a Mr. Felix) opined that Mr. Butler was exaggerating his limitations; that he described symptoms that he had not reported to his medical providers and conditions that had not been diagnosed; and that his testimony about his problems at Home Depot was contradictory.  Mr. Butler argues that these reasons are not supported by substantial evidence.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  But credibility determinations "must be grounded in the evidence and

articulated in the determination or decision." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4; *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that a credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." (quotation omitted)).

We agree with Mr. Butler that it is not clear why the ALJ thought his testimony about his work at Home Depot was contradictory. But we need not address this issue, because the ALJ's other reasons provide substantial evidence to support the credibility determination.

The ALJ noted that Mr. Felix opined that Mr. Butler was exaggerating his limitations during functional capacity testing. Mr. Butler objects to considering Mr. Felix's opinion because his report is not in the record; rather, portions of the report and an accompanying DVD of the testing are discussed in a rebuttal report by Dr. Lichtblau. But a Social Security hearing places "an emphasis upon the informal rather than the formal." *Richardson*, 402 U.S. at 400. Accordingly, a hearsay medical report may constitute substantial evidence. *See id.* at 402.

Dr. Lichtblau's report was addressed to Mr. Butler's counsel, and evidently Dr. Lichtblau was provided copies of Mr. Felix's report and the DVD. Thus, it appears that counsel had access to Mr. Felix's report and the DVD. Counsel submitted the rebuttal for the administrative record, but did not supply the report or the DVD. Perhaps it would have been preferable for the ALJ to request a copy

of the Felix report for the record, as Mr. Butler suggests. But in effect, Mr. Butler's objection to considering Mr. Felix's opinion exploits a problem that was created by (and that could easily have been solved by) his counsel. There is no reason to doubt the accuracy of Dr. Lichtblau's descriptions of Mr. Felix's report. Under these circumstances, we shall not preclude the ALJ from considering Mr. Felix's opinion. *Cf. id.* at 404-05 (noting that the claimant, who objected to a lack of opportunity for cross-examination, did not avail himself of his right to subpoena witnesses); *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation.").

The ALJ also indicated that Mr. Butler's complaints to his doctors did not support his testimony about the degree of his pain. Particularly, Mr. Butler testified that around the end of his employment, he could not stand for more than three to five minutes without "feel[ing] like somebody is pouring scalding water on [his right] leg." Aplt. App. at 49. Mr. Butler counters that from 2004 on he did consistently report leg pain to his doctors.

As the ALJ noted, there is no question that Mr. Butler suffers pain. The issue is whether the ALJ had adequate grounds for discounting his testimony about the extent of the pain. The description "scalding water" is evocative of a high degree of (even unbearable) pain. And the ALJ correctly noted that while

-5-

Mr. Butler complained of leg pain to physicians, the notes do not reflect complaints equating his pain to anything of such degree, even in August 2006, just weeks before his alleged onset date. There are no treatment records between August 2006 and February 2007. In February 2007, clinical notes first state that he was having trouble standing for more than several minutes at a time, but even those notes do not describe pain like scalding water. It appears that his next visit to his treating physician was in May 2008, when he complained of pain in his right knee, and his only reported medication was a cholesterol drug. In August 2008, he complained of syncope and back pain, and he was reported as taking no medications. The absence of medical entries reflecting complaints as severe as his testimony at the hearing supports the ALJ's credibility determination.

The ALJ also concluded that Mr. Butler may exaggerate his conditions. When being evaluated by psychologist Dr. France for a rehabilitation psychology report, on one test (the Symptom Checklist 90) Mr. Butler reported significant or highly significant symptoms for nine different emotional disorders. Yet the psychologist did not conclude that he had such conditions. The ALJ concluded, "[w]hat I find significant here is not his actual limitations, but the fact that he endorsed a list of symptoms that indicate fairly serious mental problems, none of which are diagnosed by the examiner and none of which show up anywhere in the treatment records." *Id.* at 32. Mr. Butler argues that Dr. France found that "[t]here is no indication of him attempting to present himself in a more negative

light than is actually the case." *Id.* at 266. But this analysis reflected the results of the Personality Assessment Inventory, not the separate Symptom Checklist 90. The ALJ did not err in relying on the Symptom Checklist 90 results to discount Mr. Butler's credibility. Morevoer, contrary to Mr. Butler's argument, this assessment did not contradict Dr. France's medical opinion, given that Dr. France did not diagnose the various mental impairments implied by the test results.

## B. Medical Evidence

Mr. Butler next argues that the ALJ erred in evaluating the opinions of his treating and examining physicians, namely, his treating physician Dr. Mansfield as well as examiners Dr. France and Dr. Lichtblau. He also argues that the ALJ erred in interpreting certain MRI results.

### *1. Dr. Mansfield*

Dr. Mansfield treated Mr. Butler between 2003 and 2008. On September 10, 2008, he completed a RFC report in which he assessed Mr. Butler's ability to sit at ten to fifteen minutes at a time, for one to two hours total in a hard chair, or up to three hours total in a soft chair; his ability to stand at five minutes at a time, up to two hours total; and his ability to walk at fifteen minutes at a time, up to four hours total. He opined that Mr. Butler's symptoms would interfere with the necessary attention and concentration to perform work, and that he would need to take unscheduled breaks "all the time." *Id.* at 392. He also opined that Mr. Butler would be absent from work more than four times a month. And he

stated that these assessments applied back to March 2003. The ALJ declined to give Dr. Mansfield's opinions controlling weight because (1) the RFC report was contradicted by examination findings from 2004 and 2005 showing Mr. Butler was able to perform light to medium work and by Mr. Butler's actual work activity with Home Depot during those years, (2) the report was inconsistent with Dr. Mansfield's own treatment notes, and (3) the report relied on Mr. Butler's allegations of increasing pain, which the ALJ found to be not credible.[1]

The standards for evaluating a treating physician's opinion are familiar:

> When evaluating the opinion of a treating physician, the ALJ must follow a sequential analysis. In the first step of this analysis, he should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. If the answer to both these questions is "yes," he must give the opinion controlling weight. But even if he determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight.

*Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citations omitted). "An ALJ may decline to give controlling weight to the opinion of a treating physician where he articulates specific, legitimate reasons for his decision." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (alteration and quotation omitted).

---

[1] The ALJ also rejected Dr. Mansfield's opinion that Mr. Butler met certain listing criteria. Mr. Butler does not address this portion of the ALJ's decision or argue that he should have been found disabled at step three based on Dr. Mansfield's opinion, and therefore we do not consider such issues.

On appeal, Mr. Butler argues that Dr. Mansfield's RFC report was dated September 2008, and "[h]is opinion in September 2008[] is not inconsistent with Mr. Butler's ability to perform work more than two years prior." Aplt. Opening Br. at 22. But Dr. Mansfield did not restrict his opinion to September 2008, instead specifically stating that "Keith has had the limitations and restrictions outlined in the Residual Functional Capacity Questionnaire since 3/2/03." Aplt. App. at 394. As the ALJ noted, the actual circumstances of 2004 and 2005 clearly contradicted Dr. Mansfield's RFC report. He did not err in concluding that such actual circumstances undermined Dr. Mansfield's opinion as to Mr. Butler's limitations.

Mr. Butler also contends that Dr. Mansfield's notes were not inconsistent with the limitations he assessed. He points out that MRI results in 2004 and 2008 showed his condition to be worsening. The ALJ, however, relied on different aspects of Dr. Mansfield's treating notes. For example, in September 2008, Dr. Mansfield checked a box indicating that Mr. Butler has severe burning and painful dysesthesias, which conflicted with his own prior diagnoses of benign meralgia paresthetica.

Mr. Butler further argues that Dr. Mansfield opined his impairments limited his ability to maintain gainful employment, and states, "[t]he ALJ has not provided the substantial evidence needed to reject the opinions of a long-time treating physician." Aplt. Opening Br. at 23. The ultimate issue of a claimant's

ability to work is reserved to the Commissioner, however; it is not a medical opinion entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

Finally, Mr. Butler states that the ALJ could not discount Dr. Mansfield's opinion based on Mr. Butler's credibility because the ALJ improperly evaluated his credibility. As discussed above, however, the credibility determination was supported by substantial evidence.

### 2. *Dr. France*

Dr. France is a psychologist who examined Mr. Butler on March 31, 2006, and April 15, 2006, to prepare a rehabilitation psychology report dated May 7, 2006. He opined that Mr. Butler had "a chronic pain problem with a concurrent affective component" which, in combination with other impairments, had "rendered him unemployable in his preferred occupation." Aplt. App. at 271. Dr. France thus classified Mr. Butler as "having a secondary employment limitation." *Id.*

Mr. Butler contends that the ALJ committed reversible legal error by failing to explain the weight given to Dr. France's opinion. We agree that the ALJ did not state what weight, if any, Dr. France's opinion was afforded. But under these circumstances, we do not consider this omission to require reversal.

-10-

Dr. France was an examining psychologist, not a treating medical source. Therefore, his opinion was not entitled to controlling weight and the process afforded a treating source's opinion. *See Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003). An ALJ is required to "review all of the evidence relevant to [a] claim" and "make findings about what the evidence shows." 20 C.F.R. §§ 404.1527(c), 416.927(c). But the ALJ's discussion of Dr. France's opinion shows that the ALJ obviously considered the opinion, and the decision generally is consistent with the opinion.[2] For example, Dr. France opined that Mr. Butler could not work in his chosen profession; that is, as a plumber. The ALJ agreed. Dr. France also indicated that a secondary employment limitation did not preclude all employment, but instead eroded potential earnings. Moreover, Dr. France's opinion was rendered while Mr. Butler was still working at Home Depot. In sum, we are not convinced that the ALJ's failure to assign an explicit weight to Dr. France's opinion amounts to reversible error.

### 3. Dr. Lichtblau

Dr. Lichtblau is a board-certified physiatrist who examined Mr. Butler to prepare a medical functional capacity assessment dated August 16, 2007.

---

[2] Dr. France did opine that Mr. Butler was suffering "the physiological and emotional aspects of depression." Aplt. App. at 271. The ALJ interpreted this opinion to be a diagnosis of "mild depression associated with pain," consistent with the agency psychological expert's opinion. *Id.* at 25. Ultimately, the ALJ concluded that Mr. Butler's depression was less than severe. Mr. Butler does not argue that the ALJ erred in finding his depression not to be a severe impairment. Thus, this area of potential disagreement is not relevant to our analysis.

-11-

Dr. Lichtblau's tests showed that Mr. Butler could lift ninety-nine pounds from knee to hips, eighty-three pounds from hips to shoulder, and fifty-three pounds from shoulder to overhead. The doctor opined that Mr. Butler would not be able to work four hours per day on an uninterrupted basis; he should have a job that allowed him to change positions frequently, at will; he should avoid activities such as bending, kneeling, squatting, climbing, reaching, running, and jumping; and he would have "good days, bad days and missed days of work" due to "acute, intermittent exacerbations of pain and discomfort." Aplt. App. at 386. Finally, he opined that "this patient will not be able to maintain gainful employment . . . secondary to acute, intermittent exacerbations of pain and discomfort." *Id.*

The ALJ gave significant weight to Dr. Lichtblau's functional test results, but gave no weight to his opinion that Mr. Butler could not sustain full-time work. The ALJ noted the "opinion rests heavily on the credibility of the claimant because he finds the claimant disabled by expected exacerbations of pain in apparent contradiction to the actual capacity as shown in his tests which appear to show lifting capacity between light and medium." *Id.* at 28; *see also id.* at 33. Mr. Butler argues that Dr. Lichtblau's opinion is based on medical records and his own examination in addition to Mr. Butler's reports, and thus it is misleading to characterize the opinion as based on Mr. Butler's descriptions of his pain.

The ALJ recognized that there is medical evidence of impairments that can reasonably be expected to cause pain. The extent of such pain, however, is

necessarily subjective, at least in part. Dr. Lichtblau's report indicates that his opinions as to the extent of pain were based in large part on Mr. Butler's reports to him. And as discussed above, the ALJ's decision to discount a medical opinion based on his evaluation of Mr. Butler's credibility is not reversible error.

Mr. Butler also suggests that the ALJ could not accept Dr. Lichtblau's characterizations of Mr. Felix's report while simultaneously discounting Dr. Lichtblau's opinions as to Mr. Butler's functional capacity. These are two separate issues, however; one is factual while the other is opinion. And as for the factual aspect, as stated above, there is no reason to doubt the accuracy of Dr. Lichtblau's descriptions of the Felix report.

### 4. MRI Results

Finally, Mr. Butler argues that the ALJ erred in interpreting his August 2008 MRI report, which compared the 2008 results to a MRI done in 2002. The ALJ characterized the analysis as "confusing partly because it does not make clear which observations relate to the 2002 MRI versus the 2008 MRI." Aplt. App. at 34. Mr. Butler argues that if the ALJ found the report confusing, then he should have called a medical expert. But he does not identify any error the ALJ may have made in interpreting the report, and we see no indication of error.

## III.

The judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge