FILED
United States Court of Appeals
Tenth Circuit

March 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MELISSA J. CRAWFORD,

        Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[*]

        Defendant-Appellee.

No. 12-5125
(D.C. No. 4:11-CV-00233-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT[**]**

---

Before **BRISCOE**, Chief Judge, **McKAY** and **O'BRIEN**, Circuit Judges.

---

        Melissa J. Crawford appeals from a district court order affirming the

Commissioner's denial of disability insurance benefits (DIB) and supplemental

---

[*]      In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

security income payments (SSIP).  We have jurisdiction under 28 U.S.C. § 1291 and

42 U.S.C. § 405(g).  We reverse and remand for further proceedings.

## BACKGROUND

Crawford suffers from bipolar disorder.  She has a high-school education and

past-work experience as a customer-service representative.

In January 2009, she began seeing Dr. Peter Rao for treatment.  He prescribed

various anti-depressant medications and recommended follow-up visits.

In February 2009, at age 40, she applied for DIB and SSIP.  She was examined

by Dr. Minor Gordon, who found her bipolar disorder "to be in marginal to fair

remission," and he gave her a Global Assessment of Functioning (GAF) score of 65.[1]

Aplt. App. at 177.

In April 2009, a state-agency medical consultant, Dr. Deborah Hartley,

reviewed Crawford's records and opined that she was moderately limited in her

daily-living activities, her social functioning, and her abilities to maintain

concentration, persistence, or pace.  Additionally, Dr. Hartley found marked

---

[1]     "The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning."  *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).  A GAF score of 65 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* (quotation omitted).

limitations in her abilities to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public.[2]

In July 2009, Dr. Rao completed a Mental Status form for Crawford, describing her prognosis as fair and concluding that she could "not now" respond to work pressure, supervision, and co-workers. *Id.* at 203. Dr. Rao continued to see her on a monthly basis, monitoring her symptoms and prescribing medication. During an April 2010 visit, he noted she had been cutting or burning her arm. The following month, he completed a mental Medical Source Statement (MSS) form, checking boxes for moderate or marked limitations in thirteen of the form's twenty categories.[3]

Crawford appeared before an administrative law judge (ALJ) in May 2010 and testified that "one of the bigger problems" she faces is "dealing with people," *id.* at 34, and consequently, she does not "leave [her] house unless [she] usually [has] to," *id.* at 34-35. She also testified to having been cutting and burning herself for "about a year," and Dr. Rao "will work with [her] on it." *Id.* at 38.

---

[2]   A second medical consultant, Dr. Paul Cherry, concurred in Dr. Hartley's assessments.

[3]   Dr. Rao identified seven marked limitations: understanding and remembering detailed instructions; working in coordination with or proximity to others without being distracted; completing a normal work day and performing at a consistent pace; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism; getting along with coworkers; and setting realistic goals or making plans independently of others. In regard to moderate limitations, Dr. Rao checked six boxes: carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; sustaining an unsupervised routine; responding appropriately to work-setting changes; and traveling in unfamiliar places or using public transit.

According to a vocational expert (VE), an individual with Crawford's age, education, and work experience who was limited to simple, repetitive tasks and only "incidental contact with the public" could not perform Crawford's past work as a customer-service representative. *Id.* at 40. But, the VE said, such an individual could work as a dishwasher or a bench assembler.

The ALJ determined that Crawford was not disabled given the existence of other jobs in the economy she could perform. In doing so, the ALJ found Crawford's bipolar disorder was capable of causing the symptoms she alleged, but not to the degree she claimed. Additionally, the ALJ declined to give controlling weight to Dr. Rao's opinion of moderate to marked limitations in most areas of mental functioning because Dr. Rao's opinion conflicted with his own treatment records and was inconsistent with the other record evidence.

Crawford challenged the denial of benefits in district court. A magistrate judge affirmed, prompting this appeal.

## DISCUSSION

### I. Standards of Review

In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v.*

*Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation omitted).

## II. Treating-Physician Rule

Crawford argues that the ALJ erred by not giving Dr. Rao's opinions on the MSS form controlling weight. A treating physician's opinion must be given controlling weight if it "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). "[I]f the [ALJ's] opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Here, the ALJ found Dr. Rao's opinions not to be entitled to controlling weight because they conflicted with his treatment records and were inconsistent with other record evidence. As to Dr. Rao's treatment records, we agree: they are largely devoid of observations or conclusions tending to support the thirteen moderate and marked limitations he identified on the MSS form. But the ALJ completely failed to address the significance of Crawford's self-injury. Indeed, the ALJ erroneously

found "[t]here is no mention of [Crawford] cutting herself or burning herself in Dr. Rao's treatment records." Aplt. App. at 15.

Further, to the extent the ALJ found Dr. Rao's opinions inconsistent with the other record evidence, the ALJ failed to identify those inconsistencies with any clarity. Rather, the ALJ simply referred to an earlier discussion in his decision, which mostly recounted the content of Dr. Rao's treatment records.

We cannot determine whether substantial evidence supports the ALJ's decision not to give Dr. Rao's MSS opinions controlling weight.

Next, Crawford argues the ALJ erred by not specifying the weight he actually gave Dr. Rao's MSS opinions. When a treating physician's opinion is not given controlling weight the ALJ must explain what weight, if any, was assigned to the opinion "using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."[4] *Watkins*, 350 F.3d at 1300. Specifically, "the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion,"

---

[4] The six factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted).

- 6 -

and if he "rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (brackets and quotation omitted).

The Commissioner concedes the ALJ did "not explicitly state the specific weight [he] [gave] to Dr. Rao's opinion." Aple. Br. at 24. But, in summary fashion, she assures us that we can nevertheless conduct a meaningful review of the ALJ's decision to ascertain that weight and determine whether it is supported by substantial evidence. But the ALJ's decision contains no explicit discussion of the six factors, and the Commissioner does not attempt to identify any implicit discussion of those factors. And if we were to somehow conclude that the ALJ gave absolutely no weight to Dr. Rao's opinions, the ALJ has provided no "specific, legitimate reason" that could explain a complete rejection of those opinions.

We conclude that a remand is necessary because we cannot meaningfully review the ALJ's decision regarding Dr. Rao's opinions.

### III. Credibility

Crawford argues the ALJ erred in finding her not entirely credible. To the extent the ALJ made this determination by rejecting her hearing testimony about self-injury on the mistaken view she did not report that behavior to Dr. Rao, the ALJ erred. *See Raymond v. Astrue*, 621 F.3d 1269, 1273 (10th Cir. 2009) (observing that "findings as to credibility should be closely and affirmatively linked to substantial evidence" (quotation omitted)). On remand, the Commissioner must revisit the issue

of credibility because Crawford's testimony about cutting and burning herself is reflected in Dr. Rao's treatment notes.

## CONCLUSION

We reverse the judgment of the district court, and we remand this case to the district court with instructions to remand to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Terrence L. O'Brien
Circuit Judge