**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ALTHEA YVONNE BARNHILL-
STEMLEY,

         Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

         Defendant - Appellee.

No. 14-1163
(D.C. No. 1:12-CV-02334-REB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

The Commissioner of the Social Security Administration (Commissioner)

denied Althea Yvonne Barnhill-Stemley's application for social security disability

insurance benefits. She now appeals for relief from this court arguing, as she did in

the district court, the Administrative Law Judge (ALJ) failed to evaluate properly all

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of the medical-source evidence and the ALJ's credibility determination regarding her

headaches was flawed resulting in an assessment of her residual functional capacity

(RFC) assessment not supported by substantial evidence. We affirm.[1]

## BACKGROUND

The parties are familiar with the facts and the medical record in this case so we

discuss the evidence only as necessary to address Barnhill-Stemley's claims on

appeal. Her last insured date for disability benefits was December 31, 2009; she

alleged disability making her unable to work since July 8, 2005. At steps one and

two of the requisite sequential analysis, the ALJ found during this time period she

had not engaged in substantial gainful activity and had severe impairments from

coronary artery disease with history of myocardial infarction and angina, asthma,

chronic obstructive pulmonary disease (COPD), obesity, degenerative disc disease of

the lumbar spine, and degenerative joint disease of the knees. *See Wall v. Astrue*,

561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step sequential analysis).

At step three, the ALJ determined none of her severe impairments met or equaled a

disabling impairment described in the Listings, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ then determined, through her date last insured, she had the RFC

> to perform a range of light work as defined in 20 C.F.R 404.1567(b)
> with the following limitations: she was able to sit for 6 hours total in an
> 8-hour workday; stand and/or walk for 15 minutes at one time and for 4
> hours total in an 8-hour workday; occasionally stoop and kneel;
> frequently reach, handle and finger; and should avoid exposure to

---

[1] Our jurisdiction derives from 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

- 2 -

concentrated dust, fumes and odors, and temperature extremes of heat and cold.

Aplt. App., Vol 1 at 19.

Based on the record and testimony from a vocational expert, the ALJ made the dispositive step-four determination: Barnhill-Stemley's RFC did not preclude her from returning to her past relevant work as a telephone interviewer, quality assurance coordinator, supervisor and manager. The Appeals Council denied review, and the district court affirmed.

## DISCUSSION

We review the agency's decision to determine whether substantial evidence supports its factual findings and whether it applied the correct legal standards. *Wall*, 561 F.3d at 1052. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "We may neither reweigh the evidence nor substitute our judgment for that of the agency." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (internal quotation marks omitted).

### I. MEDICAL OPINION EVIDENCE

Barnhill-Stemley argues the ALJ erred by not accounting for all of the restrictions identified by a consulting examiner, Dr. Qutub, and by giving very little weight to the opinion of two of her treating physicians, Drs. Radley and Fairbairn. "Where, as here, the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must decide whether the opinion should be rejected

altogether or assigned some lesser weight." *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013) (internal quotation marks omitted). Even if an opinion is not entitled to controlling weight, the ALJ must still weigh the opinion in light of the factors set forth at 20 C.F.R. § 404.1527. *Id.*

Dr. Qutub. Qutub made a detailed functional assessment, which the ALJ described as extensive and supportive of the ALJ's RFC determination. Qutub's assessment allowed as how she might need "[i]ncreased frequency of breaks" based on her respiratory and angina symptoms, "likely in 15 minute intervals per her history." Aplt. App. at 436. He also noted his "[p]hysical exam suggests she might be able to do more." *Id.*

The ALJ's RFC determination (Barnhill-Stemley was limited to work in which she could stand or walk for no more than fifteen minutes at a time) quoted Qutub's opinion. But Barnhill-Stemley tells us the ALJ erred by failing to include Qutub's express statement that Barnhill-Stemley might need breaks in 15 minute intervals. According to her, the omission means the ALJ improperly relied only on evidence from the consulting examiners' reports favoring his decision. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). She is splitting hairs; the ALJ's RFC limitation of standing or sitting for no more than fifteen minutes at a time in his RFC

- 4 -

determination adequately accounts for Qutub's statement about breaks at fifteen minute intervals.

Dr. Radley.  In a March 2008 RFC questionnaire, Radley said Barnhill-Stemley could not walk any city blocks and could only stand or walk for ten minutes at a time.  According to Radley, in an eight-hour workday, Barnhill-Stemley needed to recline or lie down two hours, could sit for only four hours, could stand or walk for zero hours and could stoop and crouch for zero hours.  Radley went on:  she needed to take ten to fifteen minute unscheduled breaks every thirty minutes and would be absent from work more than four times a month.  In later (April 2008) cardiac and pulmonary RFC questionnaires, Radley imposed even more severe functional limitations:  in an eight-hour workday, she needed to recline or lie down for five hours, and could sit for no more than a total of two hours, thirty minutes at a time.  Moreover, she was incapable of performing even low stress jobs and her symptoms would interfere with her attention and concentration.

The ALJ concluded Radley's medical treatment records from office visits did not support the severity of these restrictions.  The notes from the office visits did not identify any need for her to lie down or recline for five hours in an eight-hour workday, any inability to sit, stand, and walk for more than three hours in a workday, or any breathing attacks leaving her so incapacitated she needed to miss four days of work a month.  Interestingly, the ALJ noted, Radley's opinion dated severe

restrictions as beginning in 2003, which was inconsistent with her gainful employment at that time.

Barnhill-Stemley takes issue with this last comment. Her income declined by twenty percent in 2003 and she had no income in 2004. That, she says, supports Radley's RFC opinions. But a claimant's annual income is not a criteria to be considered when evaluating a medical source opinion. *See* 20 C.F.R. § 404.1527. She was gainfully employed in skilled full-time work in 2003, during a time period when Radley considered her restrictions to be so severe as to require her to lie down five hours in an eight-hour workday. The evidence supports the ALJ's assertion.

Barnhill-Stemley also points to Radley's medical records describing her symptoms, such as chest pain, dyspnea, and shortness of breath, which supports Radley's RFC opinion. But the ALJ did not discount Radley's opinion because the office records lack evidence of her impairments, but because they did not support the severity of limitations the doctor described in her RFC opinions. Our review of Radley's records reveals substantial evidence supporting the ALJ's conclusion. Discrepancies between a treating physician's very restrictive functional assessment and that physician's contemporaneous treatment notes are a legitimate factor for discounting a medical opinion. *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002).

Dr. Fairbairn. Barnhill-Stemley saw Fairbairn three times. She first saw him in November 2009, complaining of migraine headaches and dizziness. He ordered a

CT scan and noted her refusal of medication for her headaches. The CT scan results were normal. She saw Fairbairn in February 2010, when she asked him to complete disability forms. His report noted her complaints, but his examination notes report she was in no acute distress, her breathing was comfortable, without wheezing, and her heart rate was regular. The doctor referred her to a neurologist and a pulmonary specialist. In June 2010, she went back to Dr. Fairbairn, again requesting him to complete disability forms. But his examination again found no acute distress; she constantly stood up and sat down; her lungs were clear; her breathing comfortable without any diminished breath sounds or wheezing; her asthma was controlled; there was no evidence that day of her COPD; and her heart had a regular rate and rhythm and no murmurs. His notes indicate she would be seeing a neurologist that day. He, completed her disability forms during the office visit.

The specialists to whom she was referred by Fairbairn all found mild or no impairments. As the ALJ discussed in detail, these specialists found no focal neurological abnormalities, no movement disorder, clear lungs, normal spirometry tests, and mild cardiologic findings. One of the specialists found no nerve root compression on examination, found no reason for surgery, and recommended she begin conservative treatment for her symptoms of musculoskeletal pain because she had never tried any physical or chiropractic therapy nor had injections for pain.

According to Fairbairn, in an eight-hour workday Barnhill-Stemley was limited to sitting for only two hours total; standing or walking for one hour; and

would need five to ten minute unscheduled breaks every ten to twenty minutes. He said she should never lift more than ten pounds, never use her right hand or her right or left fingers, could only use her right and left arms for thirty percent of the workday, and could only use her left hand for five percent of the workday. The ALJ gave very little weight to Fairbairn's opinion because it was not supported by the reports of the medical specialists to whom Fairbairn had referred her. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Fairbairn's opinion was also discounted because it was not supported by his own examination records and was inconsistent with well-supported examinations by three consultative physicians.

Barnhill-Stemley first asserts it was error for the ALJ to regard Fairbairn's opinion as based only her subjective complaints, rather than on medical evidence. She counts that as a prohibited speculative inference. Of course an ALJ may not speculate but must have a legal or evidentiary basis for asserting a medical source report was based on subjective complaints. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). Here, the ALJ had, and articulated, the evidentiary basis for his conclusion about subjective complaints: Fairbairn's examination notes did not support his RFC opinion and the only evidence in Fairbairn's records supporting his RFC opinion were Barnhill-Stemley's descriptions of her symptoms. *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009); *White*, 287 F.3d at 907-08 (a treating

physician's opinion may be discounted when it is based on the claimant's subjective assertions rather than objective medical evidence).

Next, Barnhill-Stemley complains of the ALJ's failure to discuss some probative evidence from the specialists to whom she was referred by Fairbairn. The ALJ cited a normal Electromyography (EMG) test, which evaluates muscle nerve health, but failed to cite evidence in the record of the tingling she felt at her right and left wrist when tapped (positive Tinel's signs) or allow as how a normal EMG test results does not exclude other possible diagnoses. She complains of the failure to note her 2008 complaint of hand and wrist pain, for which she was given a splint. But the ALJ did acknowledge both the positive Tinel's signs and her 2008 wrist-pain complaint in his decision, but noted an absence of any medical signs or findings relating to her wrists and in follow-up records. Actually, she was found to have a good grip. We have repeatedly made clear that an ALJ need not discuss every piece of evidence in the record; it is enough to discuss the evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (internal quotation marks omitted). Our review of the medical record reveals consideration of all the evidence by the ALJ. His discussion of Fairbairn's records and the medical evidence as a whole was legally sufficient.

Finally, we turn to the discounting of Fairbairn's opinion because it was inconsistent with examination reports from consulting examiners. Generally an ALJ

should give greater weight to the opinion of a treating physician than to that of a consultant or non-examining physician, *see Langley*, 373 F.3d at 1119, but opinions from treating physicians are not dispositive, *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). Here, legitimate reasons were given both for assigning very little weight to Fairbairn's opinion, as discussed above, and for giving more weight to the reports of consultative examiners, namely, they were well-supported. The ALJ noted Qutub's very extensive medical examination of Barnhill-Stemley and that all of the examining physicians' RFC opinions were consistent with the objective medical findings in Barnhill-Stemley's record.

The specific, legitimate reasons for discounting Fairbairn's RFC opinion are sufficient as is the ALJ's discussion of the medical evidence is legally sufficient and supported by substantial evidence in the record. We conclude substantial evidence supports the ALJ's decision to afford Dr. Fairbairn's opinion very little weight.

## II. CREDIBILITY DETERMINATION

Barnhill-Stemley says the ALJ's credibility finding regarding the severity of her headaches is not supported by substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to that evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (alteration and internal quotation marks omitted).

Barnhill-Stemley testified to experiencing migraine headaches causing a constant ringing in her ears and causing her to black out twice a day, every day, and having headaches with syncope (brief loss of consciousness) since she was fourteen. In concluding her complaints were not fully persuasive as to the intensity, persistence and limiting effect of her headaches the ALJ discussed numerous parts of the evidence. He noted (1) the first medical record in which she stated her headaches caused blackouts was in November 2009, when she told Radley she blacked out ten days a month and had since she was fourteen; (2) the clinical findings at that time showed no abnormalities; (3) treatment records from before November 2009 did not contain references to complaints about blackouts, nor any clinical signs, findings, or symptoms describing headaches of such severity, which is inconsistent with her testimony about frequent blackouts since she was fourteen; (4) in February 2010 she reported her headache-related blackouts had begun six-to-eight months earlier, which is inconsistent with her testimony about blackouts since she was fourteen; (5) she did not mention she experienced migraines, blackouts or even severe headaches during Qutub's extensive examination in January 2009; and (6) her allegations as to the severity of her headaches was not consistent with her work history or her reports of daily activities.

Barnhill-Stemley contends the ALJ misstated the medical record with respect to blackouts until November 2009. But the records she cites do not support her assertion. The August 2005 records show her denial of dizziness and syncope (loss

- 11 -

of consciousness). Aplt. App. Vol. 2 at 447. The March 2007 records report her complaints of headaches twice a month, lasting for a week, but do not mention blackouts or syncope. *Id.* at 354. According to the August 2007 records she complained of having a headache for three weeks with nausea, photophobia, ringing in ears, and vision turning black, but do not describe loss of consciousness or blackouts. *Id.* at 349. She complained of the "worst headache ever" in May 2008, but did not mention blackouts or loss of consciousness. *Id.* at 421. In short, although she complained of migraine headaches to her medical providers during the covered period, she did not tell any medical provider she suffered from headache blackouts until November 2009, nor did she describe having headaches as severe or as limiting as her hearing testimony relates. Again, the ALJ did not question the fact of her headaches; he only discounted her descriptions their severity and disabling effect. He did so because of the lack of medical evidence to support the subjective nature of her reported symptoms and discrepancies between her statements and the medical evidence.

The ALJ gave specific and legitimate reasons for discounting her subjective complaints and statements and he closely and affirmatively linked his determination to substantial evidence in the record. *See White*, 287 F.3d at 909-10.

Finding no error, we AFFIRM. Barnhill's request to proceed on appeal *in forma pauperis* or *ifp* is denied as moot. The relevant statute, 28 U.S.C. § 1915 (a) does not permit litigants to avoid payment of fees; only prepayment of fees may be

excused. Since we have reached the merits of this appeal, prepayment of fees is no longer an issue. Barnhill is, nevertheless, required to pay all filing and docketing fees. Payment must be made to the Clerk of the District Court.

Entered for the Court


Terrence L. O'Brien
Circuit Judge