FILED
United States Court of Appeals
Tenth Circuit

December 10, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAULETTE BANKS,

        Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[*]

        Defendant-Appellee.

No. 12-5220
(D.C. No. 4:11-CV-00439-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit
Judge.

Paulette Banks appeals from an order of the magistrate judge affirming the

Commissioner's decision to deny social security disability ("DIB") and supplemental

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in
this action.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

security income ("SSI") benefits. Although we reject several of Banks' objections, we conclude this case must be remanded to the agency to consider the physical and mental demands of her past work, and determine whether she is able to meet such demands given her limitations.

I.    Background

Banks protectively filed an application for DIB and SSI in 2009 claiming she could not work due to nerve damage and chronic pain in her left hand originating from an old workplace injury that had required surgery decades earlier. Her application was denied because the agency determined her condition was not severe enough to prevent her from working.

Banks saw several medical providers. The first, a consultative examiner ("CE"), reported that she could oppose her thumbs and manipulate and grasp small objects, although the strength in her left hand was weak. The CE also observed that Banks' left hand had a mild deformity and had difficulty extending in different directions. Banks then saw another physician who provided a residual functional capacity ("RFC") assessment that Banks could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 6 hours, and engage in unlimited pushing or pulling. A different physician reviewed the medical evidence and agreed with the RFC. Banks then saw a physician's assistant, who noted that Banks' right hand had tenderness and a visible scar while her left hand had decreased sensation and limited motion. Approximately a year later Banks had her hands x-rayed and the results showed severe arthritis in the first carpometacarpal joint of her right hand. The

results pertaining to the rest of her right hand and all of her left hand were "unremarkable" besides swelling at the base of her right thumb.[1]  Aplt. App. Vol. 2 at 201.

During this time, Banks reported to a clinical social worker that she had been experiencing feelings of depression, anxiety, and insomnia.  Based on this, the social worker assessed Banks with depression and a global assessment of functioning score of 56, indicating moderate symptoms.  The social worker proposed a treatment plan of individual therapy and referred Banks for a medication evaluation for antidepressants.  After two therapy sessions with the social worker, Banks was seen by a physician's assistant, who assessed her with depression, anxiety, and finger joint pain, and prescribed medication to treat her depression.  Shortly after she began taking antidepressants, however, she reported having thoughts of suicide and she discontinued the medication.

Banks continued to see the social worker for therapy on a weekly basis. Session reports noted that Banks was depressed, tired from lack of sleep, tearful, and

---

[1]    It is unclear whether the x-ray report refers to the wrong hands and that the results showing severe arthritis were in fact in Banks' left hand.  Banks' initial application refers only to problems in her left hand.  The subsequent medical examinations report only on her left hand.  And it is evident that the surgery from which Banks' hand impairment originates was performed on her left hand.  *See, e.g.*, Aplt. App. Vol. 2 at 178 (CE's notes indicating that Banks had "tendon repair" on her left hand and referencing past surgical history on her left hand).  Yet, the x-ray report states that Banks had "right hand tendon repair" in her past surgical history, *id*. at 219, with no mention of surgery on her left hand.  Further, the report states that the x-rays showed damage on Banks' right hand with negative results on the left hand. *Id*. at 218.

overcome by feelings helplessness, though her thoughts of suicide had abated after she stopped taking the antidepressants. Banks was eventually referred to a medical doctor, Chris Puls, for a mental evaluation. Dr. Puls diagnosed Banks with severe depression, noting among other things that Banks had a tearful, sad affect, and avoided most activities she used to find enjoyable.

Dr. Puls also assessed Banks' mental RFC and concluded that Banks had marked limitations in her ability to remember locations and work procedures; understand and remember both short and detailed instructions; carry out detailed instructions; maintain attention and concentration for an extended period of time; perform activities within a schedule and be punctual; travel in unfamiliar places or use public transport; and complete a normal workday and workweek without frequent interruption from her symptoms. He additionally concluded that Banks had moderate limitations in her abilities related to sustained concentration and persistence, social interaction, and adaption. He ultimately determined in his examination notes that it would be "difficult for [Banks] to sustain work at this time." *Id*. at 198.

In 2010, an ALJ conducted a hearing on Banks' claims and, after reviewing the record and hearing her testimony, denied the claims. The ALJ found that based on the record, Banks had two severe impairments, osteoarthritis of the left hand and depression. However, the ALJ determined at step four of the five-step sequential process, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing five-step process), that despite her limitations Banks could perform her past relevant work as a housekeeper, kitchen helper, cashier, and janitor. Thus, the ALJ concluded

Banks was not disabled.  The Appeals Council denied her request for review.  She then brought suit in federal court and a magistrate judge affirmed the Commissioner's decision.  Banks now appeals.

II.    Discussion

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  In doing so, we will closely examine the whole record but will not reweigh the evidence.  *Wall*, 561 F.3d at 1052.  Banks raises three issues on appeal: (1) the ALJ failed to adequately consider the medical source evidence; (2) the ALJ failed to make a proper credibility determination; and (3) the ALJ erred in finding that Banks could return to her past relevant work.  We address each in turn.

A. Medical Source Evidence

Banks first argues the ALJ failed to properly consider all the medical source evidence.  She particularly contends that Dr. Puls' opinion about her mental health limitations should have been given controlling weight.  An ALJ must give controlling weight to a treating-source opinion unless that opinion is not supported by medically acceptable clinical techniques or is inconsistent with substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  An ALJ must give reasons for declining to give controlling weight to a treating physician's opinion.  *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).  In determining what weight to give a medical opinion not given controlling weight, an ALJ must consider (1) the length of treatment and

frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree the opinion is supported by medical evidence; (4) consistency between the opinion and the record; (5) whether the physician specializes in the area on which the opinion is given; and (6) any other factors to support or contradiction the opinion. *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

We discern no error in the ALJ's decision to give Dr. Puls' opinion little weight. The ALJ did not credit Dr. Puls' opinion with controlling weight because she found the record did not support the marked limitations in the opinion. She noted that Dr. Puls evaluated Banks only once and that his opinion was at least partly based on the notes of the clinical social worker who met with Banks prior to the evaluation. The ALJ also found that while Banks was depressed, the "objective medical signs and findings are relatively mild," Aplt. App. Vol. 2 at 17, suggesting an inconsistency between the record and Dr. Puls' opinion. Thus, notwithstanding the ALJ's omission of Dr. Puls' specialty—of which there is no record evidence—the ALJ appropriately considered all of the factors outlined in *Goatcher*. As such, she provided "good reasons in [her] written decision for the weight [she] gave the treating physician's opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding no

error where the ALJ did not expressly discuss all six factors in deciding what weight to give medical opinion).[2]

Nor do we identify an internal inconsistency in the ALJ's conclusion that Banks' medical signs were mild at step four despite finding her depression a "severe" impairment at step two. The reason is simple: step two and step four are different standards. To find a "severe" impairment at step two requires only a threshold showing that the claimant's impairment has "more than a minimal effect on [her] ability to do basic work activities." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). To find a disability at step four, on the other hand, requires that the claimant's specific functional limitations are such that she is unable to perform her past relevant work. 20 C.F.R. § 404.1520. Thus, a step-two determination that Banks' mental impairment is "severe" only allows the sequential process to proceed; it does not reflect the severity of her functional limitations relevant to step four.

Banks' additional contention that the ALJ erred in not addressing the severity of her right hand's limitations and ignoring certain limitations in her left hand is also without merit. Substantial evidence in the record demonstrates that the symptoms in both of Banks' hands were relatively mild. Banks did not even complain about her

---

[2]     Banks also claims that the ALJ should have obtained additional evidence by re-contacting Dr. Puls or obtaining a CE report to assess her mental impairment. However, an ALJ should do so only where the evidence is inadequate or insufficient to allow the ALJ to make a proper disability determination. *See Hawkins v. Chater*, 113 F.3d 1162, 1166-69 (10th Cir. 1997); *White v. Barnhart*, 287 F.3d 903, 908-09 (10th Cir. 2001). Nothing in either the decision or the record suggests that the ALJ lacked enough information to make a proper disability determination.

right hand or have it examined until more than a year had passed from when she filed her application. As to her left hand, the ALJ's conclusions are consistent with the CE's evaluation and the subsequent RFC assessment, which was based on the medical record, showing that despite some limitations her left hand maintained its ability to function.

B. Credibility Determination

Banks also argues the ALJ did not perform a proper credibility determination. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Here, although she found Banks' medically determinable impairments could reasonably be expected to cause the symptoms alleged, the ALJ found that Banks' testimony about the "intensity, persistence, and limiting effects" of her symptoms were not credible to the extent they were not consistent with her RFC. Aplt. App. Vol. 2 at 14. We conclude this credibility determination is supported by substantial evidence in the record considering (1) the relatively mild assessments in the treatment records, including the CE's report stating that Banks moved her extremities well and had solid grip strength in both hands; (2) the fact that Banks infrequently sought treatment for either hand, suggesting she had more mild limitations; and (3) the fact that there were no physical functional restrictions imposed by any of Banks' physicians.

C.  Past Relevant Work

Lastly, Banks contends the ALJ failed to make the required step-four findings about the physical and mental demands of her past work as required by *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  On this point we agree.

Under *Winfrey*, step four of the sequential analysis has three phases: (1) determine the claimant's RFC; (2) determine the physical and mental demands of the claimant's past work; and (3) determine whether the claimant is able to meet the demands of her past work found in phase two despite her physical and mental limitations found in phase one.  *Id*.  "At each of these phases, the ALJ must make specific findings."  *Id*.

Here, after determining Banks' RFC, the ALJ all but ignored the second and third phase of the analysis.  Although the ALJ obtained evidence about the general physical demands of Banks' past work, the ALJ did not make any findings about what that work specifically requires.  Nor did the ALJ consider such demands in light of Banks' physical limitations, instead relying entirely on the vocational expert's opinion about whether she could perform her past work.  *See id*. at 1025 ("[W]hile the ALJ may rely on information supplied by the VE at step four, the ALJ [herself] must make the required findings on the record.").  More importantly, the ALJ failed to make a single inquiry into the mental demands of Banks' past work, ignoring this requirement entirely.  *See id*. at 1024 (holding that when a claimant has a mental impairment, the ALJ must "obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . in order to determine if the

claimant's mental impairment is compatible with the performance of such work.").

The ALJ's failure to make findings about the demands of Banks' past work

constitutes reversible error.  Accordingly, we remand with instructions to make

findings about both the physical and mental demands of Banks' past work, and to

reassess her ability to perform such work in light of those findings.

III.    Conclusion

The judgment of the magistrate judge is affirmed in part, reversed in part, and

remanded with instructions for further proceedings consistent with this order and

judgment.

Entered for the Court


David M. Ebel
Circuit Judge